UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  14-CR-1232-L |
| Plaintiff, | ) | |
| | ) | **JUDGMENT AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |
| vs. | ) | |
| MIGUEL MALDONADO, | ) | **[ECF No. 15.]** |
| Defendant. | ) | |

Defendant is charged in a one-count indictment with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b). Defendant has been physically removed from the United States pursuant to reinstatement of a previous order granting voluntary departure, and ordering deportation in the alternative. Defendant has filed a Motion to Dismiss the Indictment on the basis that there is no valid order of removal upon which the government may base its prosecution. (Doc. 15.)

Defendant contends: 1) that the reinstatement of an order granting voluntary departure cannot serve as a valid removal order within the meaning of 8 U.S.C. § 1326, and that as a result the 2012 reinstatement order referenced in the indictment is invalid; 2) that the Immigration Judge ("IJ") never advised him during the 1986

removal proceedings of suspension from deportation or registry, thereby violating his due process rights and invalidating the deportation order; and 3) that the INS violated Mr. Maldonado's due process rights by recommending the denial of his initial naturalization petition, by failing to timely adjudicate his subsequent petitions, and by failing to respond to his requests for documents. (Def.'s Mot. p. 17.)

## FACTUAL BACKGROUND

Mr. Miguel Maldonado came to the United States in 1970 with his future wife and child on a visitor's visa from Peru that was originally set to expire on August 24, 1974. (*See* Doc. 15, Ex. A.) He married his wife in 1971, and the two had two children in the United States. (*See* Doc. 15, Ex. B (marriage certificate); Ex. C, D (birth certificates).) Mr. Maldonado overstayed his visa after receiving a six-month extension. (*See* Doc. 15, Ex. GG.) According to a 1989 Immigration Appellate order, he received two convictions for shoplifting in 1972. (*See* Doc. 15, Ex. FF, p. 2.)

Mr. Maldonado voluntarily enlisted in the United States Army in 1976 during the period of Vietnam hostilities. *See* 8 C.F.R. § 329.2 (defining the period of Vietnam hostilities under U.S.C. § 1440 as between February 28, 1961 and October 15, 1978). (*See* Doc. 15, Ex. E.) According to the 1986 order of the IJ, he was able to enlist by purchasing a false birth certificate stating he was a natural born citizen from Puerto Rico. (*See* Doc. 15, Ex. BB, p. 8.) He served for three years and received an honorable discharge in 1979. (*See* Doc. 15, Ex. F.)

Mr. Maldonado applied to become a United States citizen in 1979. (*See* Doc. 15, Ex. G.) In 1979 he took and passed his naturalization exam, and he swore allegiance to the United States. (*See id.*) Mr. Maldonado contends that the examiner recommended denial on the grounds that Mr. Maldonado was not a lawful permanent resident and that he had improperly enlisted in the army. (*See*

Def.'s Mot. p. 4:12-18.)

Mr. Maldonado asserts that in 1980 he withdrew his original petition for naturalization because he "was led to believe that the designated examiner had made a final and non-reviewable decision on his application for citizenship . . . ." (Def.'s Mot. p. 4:12-18 (citing Doc. 15, Ex. H, a 1983 letter from Mr. Maldonado's then-immigration attorney to the Immigration and Naturalization Service ("INS") that would seem to provide no support for this statement).)[1]

In 1981, Mr. Maldonado was arrested for assault and battery, and in 1982, he seems to have been arrested for possession of cocaine; charges were dismissed in both cases. (Doc. 15, Ex. BB, p. 7.) Records pertaining to the 1981 charges seem to have been expunged. (Doc. 15, Ex. JJ.)

In 1982, Mr. Maldonado returned to Peru for about a month and reentered the country using a fraudulently obtained United States passport. (Doc. 15, Ex. BB, p. 4; Ex. FF, p. 1-2.) He obtained this passport by using the aforementioned false birth certificate, and on March 14, 1983, he was convicted of violating 18 U.S.C. § 1542 for false statement in the application and use of a United States passport. (Doc. 15, Ex. FF, p. 1-2.) He received a suspended sentence and a fine of $750. (*Id.*)

Mr. Maldonado renewed his petition for naturalization on November 10, 1983. (*See* Doc. 15, Ex. H.) He concurrently filed a new application for naturalization. (Doc. 15, Ex. I.)

---

[1] Defendant incorrectly cites Exhibits F and D as "noting 'NOT LPR' and 'improper enlistment' as reasons for recommending denial[;]" Exhibit F is Mr. Maldonado's certificate of honorable discharge, and Exhibit D is the birth certificate of one of Mr. Maldonado's children. (Def.'s Mot. p. 4:13, 39:4; Doc. 15, Ex. F, Ex. D.) Exhibit G, however, is Mr. Maldonado's original petition for naturalization; it notes "NOT LPR" under "Documents presented:" and "INV - Improper Enlistment" under "Action or documents still required." (Doc. 15, Ex. G.) However, the meaning of these terms in this context is less than apparent.

At some point prior to 1984, deportation proceedings were initiated against Mr. Maldonado. (*See* Doc. 15, Ex. J, p. 2; Ex. A.) On October 20, 1983, the INS District Director issued an order to show cause why Mr. Maldonado should not be deported. (*See* Doc. 15, Ex. M.)

Hearing nothing from the INS as to his previous petitions for naturalization, Mr. Maldonado filed a third petition for naturalization in December of 1984. (Doc. 15, Ex. J.) In February of 1986, Mr. Maldonado received a Notice to Appear for his naturalization interview. Defendant contends that the interview was continued, but that the INS failed to follow up with him. (Defs.' Mot. p. 4:23-5:4.) Mr. Maldonado then filed a fourth petition in United States District Court for the Eastern District of Pennsylvania in March of 1986. (Doc. 15, Ex. K.)

In that same March of 1986, an IJ found Mr. Maldonado "deportable as charged" in deportation proceedings. (Doc. 15, Ex. BB, p. 4.) The IJ did not advise Mr. Maldonado of his right to apply for suspension of deportation. (*See* Doc. 15, Ex. Z.) The IJ granted Mr. Maldonado voluntary departure on or before May 14, 1986, or any such extension that the INS District Director might grant thereafter. (Doc. 15, Ex. BB, p. 9.) The IJ also ordered Mr. Maldonado deported in the alternative if he did not comply with the terms of voluntary departure. (*Id.*) Mr. Maldonado appealed the IJ's 1986 order. (Doc. 15, Ex. CC.) The appeal was dismissed on January 13, 1989, and the voluntary departure was extended until 30 days past the order dismissing the appeal. (Doc. 15, Ex. DD.) Despite being ordered to voluntarily depart prior to February 13, 1989, Mr. Maldonado remained in Maryland until July 23, 1991. (*See id.*; Doc. 20-2, p. 2-13.)

Mr. Maldonado filed an application for permanent residence, which INS received on September 1, 1987. (Doc. 15, Ex. L.) INS rejected this application on May 3, 1988, citing its October, 1983 order to show cause and concluding that Mr.

Maldonado should have filed a motion to reopen the case in immigration court in Washington D.C. instead. (Doc. 15, Ex. M.)

In response to a Freedom of Information Act request, INS informed Mr. Maldonado that it had no records of his petitions for naturalization on August 10, 1988. (Doc. 15, Ex. O.) INS sent another similar response to Mr. Maldonado's attorney on January 9, 1989. (Doc. 15, Ex. R.) In July of 1989, Mr. Maldonado's attorney filed another petition for naturalization on his behalf. (Doc. 15, Ex. Q.)

On February 21, 1992, Mr. Maldonado was convicted of one count of conspiracy to distribute cocaine and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846, and seven counts of unlawful distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 20-2, p. 2; *see United States v. Maldonado*, 989 F.2d 496 (4th Cir. 1993).) He received a sentence of fourteen years, of which he served eleven. (Doc. 15, Ex. X.) After being released from prison on October 3, 2003, Mr. Maldonado went into the custody of Immigrations and Customs Enforcement (ICE), a branch of the Department of Homeland Security (DHS). (*See* Doc. 15, Ex. X; Ex. Y.)

On October 10, 2003, Mr. Maldonado filed a petition for a writ of habeas corpus in United States District Court for the District of Maryland seeking a determination of his naturalization and a stay of deportation proceedings. (Doc. 15, Ex. W.) United States Citizenship and Immigration Services ("CIS") produced a report indicating its findings of fact, conclusions of law, and recommendation that Mr. Maldonado's petition be denied. (*See id.*; Doc. 15 Ex. X (CIS' report).) The court granted Mr. Maldonado a stay of deportation proceedings pending resolution of the matter. (Doc. 15, Ex. W.)

CIS' report applied the moral character component of the residency requirement of Title III of the Immigration and Nationality Act, as that act existed

5

on March 7, 1986, to Mr. Maldonado's conduct up to the point at which he would have been granted citizenship, despite the possibility that Mr. Maldonado's military service may have exempted him from a requirement of continuous residency. (Doc. 15, Ex. X (applying 8 U.S.C. §§ 1427, 1439 (1982)).) Taking Mr. Maldonado's cocaine distribution conviction into account, CIS recommended that his petition be denied on the ground that he had not established being a person of good moral character up to the point of possible admission to citizenship. (*Id.*)

The District Court apparently followed CIS' recommendations, dismissing his petition and lifting the stay on his deportation proceedings on June 24, 2004. (Doc. 15, Ex. Y.)

Mr. Maldonado was deported on November 3, 2004 pursuant to a deportation order that had been issued on January 21, 2003. (Doc. 15, Ex. KK.) The 2003 deportation order referenced a prior final deportation order by the Board of Immigration Appeals, presumably the 1989 dismissal. (*Id.*; *see* Doc. 15, Ex. DD.)

Mr. Maldonado later reentered the country, and he was again deported via an April 30, 2012 reinstatement of the 1986 order. (Doc. 15, Ex. LL; *see* Ex. CC (1986 order).)

Mr. Maldonado apparently reentered the country once more in late January of 2014; on April 30, 2014, the instant indictment was filed, charging him with attempted reentry of a removed alien in violation of 8 U.S.C. § 1326. (Doc. 1.) The indictment references Mr. Maldonado's removal from the United States subsequent to October 28, 2009: the April 30, 2012 reinstatement and deportation. (*Id.*; Doc. 15, Ex. LL.)

Mr. Maldonado entered a plea of not guilty on May 14, 2014. (Doc. 9.) He filed this motion to dismiss the indictment on June 16, 2014. (Doc. 15.)

## DISCUSSION

A defendant in a 8 U.S.C. § 1326 prosecution "has a Fifth Amendment right to collaterally attack a removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To succeed in a collateral challenge to a removal order, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id*. An underlying removal order is "fundamentally unfair" when: (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Id.*; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

### A. The 1986 IJ Order Contains an Order of Removal, and Subsequent Reinstatements of that 1986 Order Are Not Invalid because the 1986 Order Granted Voluntary Departure.

First, Defendant contends that the IJ's 1986 order granting voluntary departure was not an order of deportation, and that as a result, the 2012 reinstatement of that order that forms the predicate for the instant indictment is invalid. (Def.'s Mot. p. 13:20-17:10.) Defendant is incorrect.

The 1986 order granting Defendant voluntary departure also ordered his deportation in the alternative if he did not comply with the terms of voluntary departure:

//
//

> IT IS FURTHER ORDERED that if the Respondent fails to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following order shall thereupon become immediately effective: *Respondent shall be deported from the charges contained in the Order to Show Cause.*

(Ex. BB, p. 9 (emphasis added).)

Mr. Maldonado's appeal of the 1986 order extended the date of his voluntary departure by 30 days, requiring that he leave the country voluntarily prior to February 13, 1989 or else face deportation without further proceedings. (*See id.*; Doc. 15, Ex. DD, p. 3.) Mr. Maldonado was later convicted of narcotics offenses in Maryland, which were committed on dates ranging from March through June of 1991. (Doc. 20-2, pp. 2, 5.)

Defendant cites *Garfias-Rodriguez v. Holder* to distinguish a grant of voluntary departure from an order of removal. 702 F.3d 504, 524 (9th Cir. 2012) (quoting 8 C.F.R. § 1240.26.) (" 'an alien granted the privilege of voluntary departure ... will not be deemed to have departed under an order of removal if the alien departs the United States no later than 30 days following the filing of a petition for review.' "). (Def.'s Mot. p. 15:5-6.)

But the 1986 order in question explicitly contained an alternative order of deportation if Mr. Maldonado were to fail to leave the country. (Doc. 15, Ex. BB, p.9.) Because Mr. Maldonado did not leave the United States before the deadline of February 13, 1989, he failed to depart as required, and the 1986 order immediately became an order of deportation. Thus, the 2012 reinstatement of that order can serve as a valid predicate for the instant indictment. *See* 8 U.S.C. § 1326(a). (*See* Doc. 20-2, pp. 2, 5.)

//
//
//

**B. The 1986 IJ Order is Invalid, as are Subsequent Reinstatements, because the The IJ Failed to Advise Mr. Maldonado of his Apparent Eligibility for Suspension of Deportation; this Failure Violates Due Process when the Resulting Order is a Predicate for §1326 Prosecution.**

Second, Defendant contends that the 2012 reinstatement of the 1986 IJ order that forms the predicate for his indictment is invalid because the 1986 IJ did not advise him of his apparent eligibility for suspension of deportation.[2] Defendant is correct.

"Immigration regulations require an IJ to inform an alien of 'apparent eligibility' for relief." *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (citing 8 C.F.R. § 1240.11(a)(2)). "[A]n IJ's failure to so advise an alien violates due process and can serve as the basis for a collateral attack to a deportation order where, as here, the order is used as the predicate for an illegal reentry charge under § 1326." *See id.* at 896-97. In determining whether an IJ had a duty to advise, the breach of which would violate due process, the focus is on "whether the factual circumstances in the record before the IJ suggest that an alien could be eligible for relief." *See id.* at 900.

The Attorney General may, at his discretion, suspend deportation of an alien who meets certain requirements and whose deportation "would, in the opinion of

---

[2] Defendant also argues that the 1986 order is invalid because of the IJ's failure to advise him of apparent eligibility for relief in the form of registry under 8 U.S.C. § 1259 (1982). (Def.'s Mot. p. 25:22-28:22.) The law in March of 1986 allowed for a discretionary grant of registry only if an alien established that he entered the United States prior to June 30, 1948. *See* 8 U.S.C. § 1259 (1982). *See* An Act to amend the Immigration and Nationality Act to revise and reform the immigration laws, and for other purposes, Pub. L. No. 99-603, 100 Stat. 3405 (Nov. 6, 1986) (updating registry date). Mr. Maldonado entered the United States in 1970, so he was not eligible for registry in the proceeding leading up to his March 14, 1986 order granting voluntary departure and ordering deportation in the alternative.

the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a) (1982).

One of the requirements for eligibility for suspension of deportation is continuous physical presence in the United States for specified periods of time, during which the alien must maintain good moral character. 8 U.S.C. § 1254(a) (1982). However, the requirement of continuous physical presence does not apply to an alien who has served for a minimum of twenty-four months in active-duty status in the military, and who, if no longer in the military, received an honorable discharge. *See* 8 U.S.C. § 1254(b) (1982). Mr. Maldonado served in the United States Army on active duty for three years, at which point he was honorably discharged. (Doc. 15, Ex. E; Ex. F.) As a result of his service, the continuous physical presence requirement in 8 U.S.C. § 1254(a) (1982) would not have applied.[3]

Still, the requirement of good moral character corresponding to the period of continuous residence in 8 U.S.C. § 1254(a) (1982) likely applies in some form to a military veteran of the type specified in 8 U.S.C. § 1254(b) (1982), even though such a veteran is excused from the continuous presence requirement. *See Santamaria-Ames v. I.N.S.*, 104 F.3d 1127, 1130 (9th Cir. 1996) (stating that military servicemen and women are not exempt from the good moral character requirement appearing in the "Residence" section of of 8 U.S.C. § 1427(a), the

---

[3] The Government seemed to assert in the July 10 hearing that the "stop-time rule" it cited in its Reply would make Mr. Maldonado ineligible for exemption from the continuous physical presence requirement of 8 U.S.C. § 1254(a), (b) (1982). (*See* Def.'s Reply, p. 6:1-11.) The Court subsequently ordered the Government to provide authority in support of this assertion. (Doc. 24.) To date, the Government has not provided any supplemental briefing on this issue. The Court interprets the Government's failure to provide such authority as a concession that it does not exist.

10

statute codifying the requirements for naturalization); *see also O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 815 (7th Cir. 2006); *Lopez v. Henley*, 416 F.3d 455, 458 (5th Cir. 2005); 8 C.F.R. § 329.2 ("To be eligible for naturalization under [8 U.S.C. § 1440(a)], [a military veteran] applicant [for naturalization] must establish that he or she . . . (d) Has been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character . . . .").

Whether the 8 U.S.C. § 1254(a) (1982) moral character requirement would have applied to Mr. Maldonado in the 1986 IJ proceeding was an unsettled point of law at the time. The previously cited cases applying a moral character requirement of naturalization to veterans are all recent, and the previously cited regulation did not contain the relevant language in 1986. *See* 8 C.F.R. § 329.2 (1986). Even if Mr. Maldonado's 1983 conviction for using a fraudulently obtained passport to enter the country would otherwise have kept him from qualifying as a person of good moral character, Mr. Maldonado may have been able to successfully argue that the good moral character requirement did not apply to him as a three-year United States Army veteran within the meaning of 8 U.S.C. § 1254(b).

Turning to the question of extreme hardship, Mr. Maldonado had two teenage children in the United States who were citizens and who had likely been living in the United States since they were born. *See Cerrillo-Perez v. I.N.S.*, 809 F.2d 1419, 1426 (9th Cir. 1987) (In the context of determining extreme hardship in a § 1254 proceeding, "[t]he BIA must consider the specific circumstances of citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children."); *see also Casem v. I.N.S.*, 8 F.3d 700, 703 (9th Cir. 1993) (citing *Cerrillo-Perez*, 809 F.2d at 1426) ("We have admonished the INS in section 1254(a)(1) cases to appraise carefully the effect

deportation would have on an alien's children who are United States citizens.") (*See* Doc. 15, Ex. C, D (birth certificates); Doc. 15, Ex. Z, p. 20.)

In short, the factual circumstances in this case were such that the Attorney General could have exercised discretion to grant suspension of deportation under 8 U.S.C. § 1254 (1982). Thus, the IJ had a duty to advise Mr. Maldonado of this potential relief, and his failure to so advise is a due process violation when the removal order that resulted from that proceeding is used as a predicate in a §1326 prosecution. *See Lopez-Velasquez*, 629 F.3d at 896.

### 1. The IJ's Failure to Advise Mr. Maldonado Excuses him of the Requirement of Exhausting Administrative Remedies.

Defendant contends that he is excused from demonstrating exhaustion of administrative remedies because the IJ failed to inform him of suspension of deportation and registry.

"An alien is barred under 8 U.S.C. § 1326(d)(1) from collaterally attacking his underlying removal order 'if he validly waived the right to appeal that order during the deportation proceedings.' " *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) (quoting *U.S. v. Muro–Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001)). However, "where a waiver of the right to appeal a removal order is not 'considered and intelligent,' an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review." *Id.* (quoting *United States v. Leon–Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003)). Where " 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the IJ fails to 'advise the alien of this possibility and give him the opportunity to develop the issue,' we do not consider an alien's waiver of his right to appeal his deportation order to be 'considered and intelligent.' " *Id.* (quoting

*Muro–Inclan*, 249 F.3d at 1182) (internal quotations omitted).

Here, the record contains an inference that Mr. Maldonado was eligible for relief in the form of a suspension of deportation. (Doc. 15, Ex. Z, pp. 20, 11 (noting that Mr. Maldonado had two United States citizen children; noting Mr. Maldonado's service in the Vietnam war).) Yet the IJ failed to advise Mr. Maldonado of his apparent eligibility for suspension of deportation. As a result, Mr. Maldonado did not raise or appeal this issue, and his failure to do so was not considered and intelligent. *See Pallares-Galan*, 359 F.3d at 1096. Because Mr. Maldonado's waiver of the right to appeal this issue was not considered and intelligent, he was deprived of his right to appeal and of meaningful access to judicial review. *See id.*

In short, Mr. Maldonado is not barred from collaterally attacking his deportation order on the ground of not having exhausted administrative remedies. *See id.*

**2.     The IJ's Failure to Advise Mr. Maldonado Deprived him of Judicial Review of his Eligibility for Suspension of Deportation.**

Defendant argues that the 2011 removal proceedings deprived him of judicial review because he did not know or understand that he might have been eligible for suspension of deportation or registry.

"[A]n alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079 .

In light of this Court's finding that the IJ did not make Mr. Maldonado aware of his apparent eligibility for relief through suspension of deportation, the

1986 removal proceeding afforded him no meaningful opportunity to seek judicial review of the fact that he was not advised of that eligibility. *See id.*

### 3. The IJ's Failure to Advise Mr. Maldonado was Fundamentally Unfair because Defects in his Underlying Deportation Proceeding Violated his Due Process Rights and Caused him Prejudice.

The Court turns next to whether the entry of Defendant's order of removal was fundamentally unfair. Defendant argues that the 1986 removal order, on which the 2012 reinstatement is based, was fundamentally unfair because the IJ did not advise him of his right to seek suspension of deportation.

First, as noted above, the IJ had a duty to advise Mr. Maldonado of his apparent eligibility for suspension and deportation. The IJ's failure to so advise is a due process violation when, as here, the removal order that resulted from that proceeding is used as a predicate in a §1326 prosecution. *See Lopez-Velasquez*, 629 F.3d at 896.

Second, Mr. Maldonado suffered prejudice as a result of this defect. When an IJ fails to advise an alien of his apparent eligibility for a specific type of relief, the alien must establish prejudice under the second prong of § 1326(d)(3), which requires the alien to make an additional showing and demonstrate "plausible grounds" for relief. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). "Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). The Ninth Circuit has applied a two-step process in making this determination. First, the court must identify the pertinent factors

informing the IJ's exercise of discretion in its determination of an alien's request. *See id.* at 1089–90. Second, the court must determine whether, "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* at 1089.

The chief factors here are: (1) whether § 1254(a)'s requirement of good moral character applied to Mr. Maldonado as an honorably discharged military veteran of three years, and if so, whether Mr. Maldonado satisfied the requirement; and (2) whether, in the opinion of the Attorney General, Mr. Maldonado's deportation would have resulted "in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]" *See* 8 U.S.C. § 1254 (1982).

First, as discussed above, it was an unsettled point of law in 1986 whether 8 U.S.C. § 1254(b) (1982) exempted military veterans from the moral character component of § 1254(a). Section 1254(b) contains no explicit moral character requirement for military veterans, and Mr. Maldonado served the country honorably as a specialist in the Army for three years, two of which were during Vietnam hostilities. *See* 8 C.F.R. § 329.2. (Doc. 15, Ex. F.) He could plausibly have been successful in a contention that, as a veteran, 8 U.S.C. § 1254(b) (1982) exempted him from the moral character component of § 1254(a)'s continuous physical presence requirement.

Second, Mr. Maldonado's children plausibly faced extreme hardship upon his deportation. In *In Re H-----*, a respondent used her sister's name on a visa application in order to use a steamship ticket that had already been purchased in her sister's name. 5 I. & N. Dec. 416, 417 (BIA 1953). The court found that this

situation posed "exceptional and extremely unusual hardship" to the respondent herself because, among other factors, "she would be unable to return to the United States in the event that she were required to leave. . . ." as a result of her past fraud. *See id.* at 418. In finding hardship, it noted that the respondent had no dependents in this country, and it focused on the innocuous character of the misrepresentation. *See id.* at 417-18.

Here, were Mr. Maldonado deported, he would similarly have been unable to subsequently obtain an immigrant visa. *See* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."). The character of Mr. Maldonado's misrepresentation in obtaining a passport using a false birth certificate was not as innocuous as that posed in *In Re H-----*. 5 I. & N. Dec. at 417.

As such, it is likely that Mr. Maldonado's deportation would have permanently deprived his two dependent teenage citizen children, for whom it would seem that Peru was a foreign land, of their father's meaningful presence in their lives. (*See* Doc. 15, Ex. C, D (birth certificates); Ex. Z, p. 20; Ex. HH.) By March of 1986, the INS had allowed Mr. Maldonado's children to grow up in the United States during the three years it had already delayed adjudicating his multiple petitions for naturalization. *See Casem*, 8 F.3d at 703 (noting the potenial effect of INS delay on hardship to a child under a different statute).

In short, it is plausible that the Attorney General would have found extreme hardship to Mr. Maldonado's children in the form of permanent loss of the familial companionship and financial support of their father. *See Cerrillo-Perez*, 809 F.2d at 1426 ("[T]he Attorney General is not required to find extreme hardship in every

case in which an alien illegally in this country is the parent of an American born child. Rather, he (or more precisely his delegee, the BIA) must determine whether the statutory requirement has been met on a case by case basis, after first considering all the relevant individual circumstances."). (*See* Doc. 15, Ex. H; Ex. P.)

According to the relevant factors, it is plausible that the Attorney General would have exercised discretion in granting Mr. Maldonado suspension of deportation. Thus, Mr. Maldonado suffered prejudice as a result of the IJ's failure to advise him of his eligibility for this form of relief. *See Barajas–Alvarado*, 655 F.3d at 1089.

Accordingly, Mr. Maldonado's underlying 1986 removal order was fundamentally unfair, as was the 2012 reinstatement of it. *See Ubaldo-Figueroa*, 364 F.3d at 1048.

**C.    Mr. Maldonado May Have Been Entitled to Citizenship in 1978 or 1983, but he has not Demonstrated that his Naturalization Proceedings are Subject to Collateral Attack.**

Defendant cites *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987), in support of a contention that due process requires that he be allowed to challenge his immigration status by collaterally attacking his previous naturalization proceedings. (Def.'s Mot. p. 36:14-37:6.)

//
//
//

> [W]here a determination made in an administrative proceeding is to play a critical role in the subsequent [] imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding . . . . *This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.* The result of those proceedings may subsequently be used to convert the misdemeanor of unlawful entry into the felony of unlawful entry after a deportation. Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Mendoza-Lopez*, 481 U.S. at 838-39 (emphasis added).

Defendant contends that an examiner recommended denial of his initial naturalization petition based on an erroneous understanding of the law, which then caused him to withdraw that petition. (*See* Def.'s Mot. p. 38:20-39:5.) It would appear that Defendant may have been entitled to citizenship at the time he filed his initial petition in 1978, which was withdrawn. *See* 8 U.S.C. § 1440 (1976). It would also appear that Defendant may have been entitled to citizenship at the time he filed his other petitions beginning in 1983, the eventual adjudication of which was delayed until 2003. *See* 8 U.S.C. § 1440 (1982).

But the Court does not address these questions now. Defendant has made no showing here that he was deprived of judicial review of the denial of his naturalization, or that he is now otherwise entitled to collaterally attack his naturalization proceedings. *See Mendoza-Lopez*, 481 U.S. at 838-39.

//
//
//
//

## CONCLUSION AND ORDER

For the reasons stated above, Defendant's motion to dismiss the indictment is **GRANTED** and count one of the Indictment (attempted entry after deportation, 8 U.S.C. § 1326(a) and (b)) is dismissed, and **JUDGMENT** is entered.

IT IS SO ORDERED.

DATED: July 17, 2014

_M. James Lorenz_
M. James Lorenz
United States District Court Judge